13

1      UNITED STATES BANKRUPTCY COURT
         EASTERN DISTRICT OF CALIFORNIA
2                 FRESNO DIVISION

3  In re                        )    Case No. 04-15726-B-13
                                )
4                               )
   George S. Jercich,           )    DC No. DRJ-3
5                               )    DC No. MNE-1
              Debtor.           )
6                               )

7  James A. Petralia; John L. Fagundes,  )
   Andrew L. Fagundes and Theresa        )
8  Fagundes; and M. Nelson Enmark,       )
   Chapter 13 Trustee,                   )
9                                        )
              Objectors.                 )
10                                       )



FILED

FEB 2 8 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

11

12  **MEMORANDUM DECISION RE MOTION TO CONFIRM SECOND AMENDED
    CHAPTER 13 PLAN AND TRUSTEE'S MOTION TO DISMISS**

13  David R. Jenkins, Esq. appeared on behalf of the debtor, George S. Jercich (the "Debtor").

14  M. Nelson Enmark, Esq. appeared as the chapter 13 trustee (the "Trustee").

15  Thomas R. Duffy, Esq. of Duffy & Guenther, LLP appeared telephonically on behalf of objecting
16  creditor, James A. Petralia ("Petralia").

    Craig Fry, Esq. of Lang, Richert & Patch appeared on behalf of objecting creditors John L.
17  Fagundes, Andrew L. Fagundes and Theresa Fagundes (collectively "Fagundes").

18          This matter comes before the court on the Debtor's motion to confirm a second amended

19  chapter 13 plan (the "Second Amended Plan" or "Plan"). Petralia objects to confirmation on the

20  grounds, *inter alia*, that (1) the Debtor is not eligible for chapter 13 relief, and (2) the Second

21  Amended Plan does not meet the requirements for confirmation under 11 U.S.C. §§ 1325(a)(4)

22  and (a)(6).[1] The Trustee moves to dismiss on the grounds that the Debtor has not established a

23  regular income and cannot fund a feasible plan. The dispute over the Debtor's ability to fund a

24  chapter 13 plan also raises a question whether the Second Amended Plan has been proposed in

25  good faith (§ 1325(a)(3)) and represents the Debtor's "best efforts" to pay his unsecured debts. §

26  ─────────────────

27          [1]Unless otherwise stated, all references and symbols referring to the Code, section or
    sections refers to the United States Bankruptcy Code 11 U.S.C. § 101, et seq., applicable to
28  cases filed before October 17, 2005.

                                         1

174

1   1325(b).  For the reasons set forth below, confirmation of the Second Amended Plan will be

2   denied and the case will be dismissed.

3         The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. §§

4   109(e) and 1325.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (L).  This

5   memorandum decision contains findings of fact and conclusions of law required by

6   Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

7   **Findings of Fact.**

8   **Background.**

9         The Debtor filed this petition under chapter 13 on July 1, 2004.  Just days before, at the

10  case management conference, the court dismissed a case he had filed under chapter 11 (Case No.

11  04-13741: the "Prior Chapter 11").  The Debtor had previously been through chapter 7 in a case

12  filed in 1986 in the Northern District of California (Case No. 586-02611-ASW: the "Prior

13  Chapter 7").

14        Debtor owns 46.42 acres of real property in the local foothills (the "Property").  The

15  schedules filed in the Prior Chapter 11 describe the Debtor's interest in the Property as "100%

16  owner in joint tenancy with wife Mary E. Jercich."  The schedules filed in this chapter 13 list the

17  Property as "community property" and indicate the Debtor is "separated," but there is no

18  evidence that the Property has been divided in a dissolution action.  The Debtor's spouse has not

19  participated in these proceedings, or asserted any interest in the Property.  There is no other

20  evidence in the record to corroborate either of the Debtor's statements regarding the nature of his

21  interest in the Property.

22        The Debtor's Schedule C claims a $150,000 homestead exemption for the Property under

23  CCP § 704.730(a)(3).  That exemption is only available if the Debtor, or a spouse residing in the

24  homestead, is over the age of 65 and/or disabled, meaning "unable to engage in substantial

25  gainful employment."  The Debtor and his spouse are separated, so presumably the spouse does

26  not reside in the homestead.  The Debtor failed to disclose his age in both the Prior Chapter 11,

27  and in this chapter 13 although that information is specifically requested in Schedule I.  The

28  record contains no evidence to otherwise suggest that the Debtor is disabled.  So the record fails

2

1  to show that the exemption would be allowed if the Debtor filed a chapter 7 and the Property
2  were liquidated subject to the oversight of a chapter 7 trustee.

3  The Debtor has yet to confirm a chapter 13 plan in this case. Petralia objected to
4  confirmation of the Debtor's initial plan, and that plan was withdrawn before the confirmation
5  hearing. The Debtor filed a first amended chapter 13 plan (the "First Amended Plan") which
6  proposed to pay 10% of the general unsecured claims with irregular payments ranging from $950
7  per month to $3,000 per month. Petralia and Fagundes both objected to confirmation of the First
8  Amended Plan. They argued that the First Amended Plan was not feasible and that Debtor was
9  not eligible for chapter 13 because he had not established a "regular income" as required in §
10  109(e). The Trustee likewise objected to the First Amended Plan on the ground that the plan was
11  underfunded. The court set that matter for trial, but the trial date was vacated and confirmation
12  was denied on June 16, 2005, because the Debtor failed to comply with the court's pre-trial
13  order. Based on the record, the court found that the First Amended Plan was not feasible under §
14  1325(a)(6); the Debtor's Schedules I & J showed that the Debtor did not have enough disposable
15  income ($1,867) to make the required payments. The court continued the Trustee's dismissal
16  motion to allow the Debtor an opportunity to propose another plan.

17  The Debtor filed his Second Amended Plan on August 15, 2005. In the Second Amended
18  Plan, the Debtor proposes to pay 9% of the general unsecured claims. Based on the estimated
19  amount of unsecured claims ($265,000), the Debtor is proposing to distribute not more than
20  $23,850 to his unsecured creditors. The schedules list $52,000 of priority claims, which
21  theoretically would have to be paid before the unsecured creditors, but only one priority claim
22  has actually been filed by the Internal Revenue Service in the amount of $5,000. The Second
23  Amended Plan is funded through an irregular payment scheme over a term of 60 months, starting
24  at $1,230 per month and increasing to $3,530 per month. The Debtor has never amended
25  Schedules I and J to reflect any increase in his disposable income.

26  **Value of the Property.**

27  The Debtor has been inconsistent with his valuation of the Property. In the Prior Chapter
28  11 schedules, he valued the Property at $312,500. In the initial chapter 13 schedules, he valued

3

1  the Property at $625,000.  Those schedules were subsequently amended to drop the value to

2  $500,000.  The Debtor later testified in a deposition that the value of the Property could be

3  between $625,000 and $720,000, and potentially $975,000 if subdivided.  None of these

4  valuations are supported by an appraisal.  The Fagundes creditors filed a claim against the Debtor

5  in the amount of $136,835 secured by a lien against the Property.  The schedules list another lien

6  held by Robert Foley in the amount of $125,000.  Robert Foley has not filed a proof of claim

7  setting forth the balance due on this obligation and the Second Amended Plan states that the

8  Debtor is making monthly payments to Mr. Foley, outside of the Plan.  For purposes of this

9  decision, the court will therefore accept the Debtor's statement regarding the amount of this lien.

10  No other secured claims against the Property are scheduled.  As discussed above, the Debtor

11  claimed a $150,000 exemption against the Property, which may or may not be a valid exemption.

12  However, there does appear to be non-exempt equity in the Property of almost $90,000 based on

13  the valuation and the liens stated in the amended chapter 13 schedules.

14  **Debtor's Income.**

15          The Debtor is self-employed and operates a business from which, he contends, the money

16  will come to fund his chapter 13 plan.  His business involves the collection of rocks from the

17  Property and sale of the rocks to landscapers (the "Rock Business").  The record from which the

18  court must determine whether the Debtor has both "regular income" and sufficient "disposable

19  income" to fund a chapter 13 plan is ambiguous and conflicting as illustrated by the following

20  chronology.  Looking first to the Prior Chapter 11, the Debtor's Schedule I filed in May 2004,

21  stated that the "regular income from operation of business or profession" was "NONE NOW -

22  Hopefully $10,000 monthly in 3 months." At that time, the Debtor received only his Social

23  Security in the amount of $750 per month, against monthly expenses of $4,000.  At a hearing on

24  June 9, 2004, the Debtor explained on the record why he had filed for relief under chapter 11,

25  and not under chapter 13:

26          THE COURT: Why is this in Chapter 11?  Did you not qualify to be in Chapter 13?

27          THE DEBTOR [JERCICH]: That's correct, your Honor.

28          THE COURT: What, too much debt, is that –

4

1    THE DEBTOR: No, I'm not a wage earner.

2    THE COURT: How are you going to confirm a Chapter 11 plan if you don't have - - you
don't have any income?

3

4    THE DEBTOR: I hope to have income. I - - I finally made a little bit here this last week.

5      Soon thereafter, the Prior Chapter 11 was dismissed and the Debtor refiled this case under

6 chapter 13. The chapter 13 schedules are highly inconsistent with the chapter 11 schedules and

7 the Debtor's prior statements in the court. The chapter 13 schedule of Business Income and

8 Expenses listed a business income of $225,000 for the 12 months prior to filing (July 2003 – July

9 2004). The Debtor's Schedules I & J state that his "regular income from operation of business or

10 profession" was $7,500 per month ($90,000 per year). The Debtor declared in Schedule I that he

11 had disposable income to fund a chapter 13 plan in the amount of $1,867. Unfortunately, even

12 that amount is inadequate to fund the Second Amended Plan. A declaration filed in support of

13 confirmation states that the Debtor also has income from "my job as a manufactured home sales

14 person." However, a subsequent brief filed by the Debtor indicates that this employment had

15 terminated and that the income actually realized from this endeavor was minimal.

16      In support of his objection, Petralia lodged a copy of the Debtor's 2004 federal income

17 tax return, dated October 2005. That document paints yet another picture of the Debtor's income

18 situation. The Debtor reported gross receipts and sales from his Rock Business of $41,069 for

19 the entire 2004 tax year, substantially less than the income projection in Schedule I. He also

20 reported a net loss from operation of the business in excess of $6,000 and an adjustable gross

21 income in the *negative* amount of $5,553 for 2004.

22 **Petralia's Objection.**

23      Petralia is a former employee of the Debtor who obtained a judgment in State court for

24 damages based on willful and malicious injury. After lengthy litigation, Petralia's judgment was

25 determined to be nondischargeable in the Prior Chapter 7. Petralia filed a proof of claim stating

26 the amount of the judgment, with post-petition interest, to be $107,105. The Debtor disputes the

27 amount of this claim, but has not filed a formal objection to the claim.

28      Petralia again objects to confirmation of the Second Amended Plan on the ground that the

5

1  Debtor does not have a "regular income" and is not eligible to be in chapter 13 under § 109(e).
2  Petralia objects under § 1325(a)(6), on the ground that the Debtor cannot fund a confirmable
3  chapter 13 plan.  Petralia also objects under § 1325(a)(4), on the ground that the Second
4  Amended Plan would not pay unsecured creditors the amount they would receive from
5  liquidation of the Property in a chapter 7.  After first indicating that they did not oppose
6  confirmation, the Fagundes creditors joined in Petralia's objection.

7      In response, the Debtor conceded that he has not yet established "the income he is capable
8  of developing from his rock business" because he has been engaged in State court litigation and
9  he was seriously injured in an accident in July 2005.  He describes the Rock Business as
10  "fledgling."  He projects, "he can significantly increase the income over the income he has made
11  since his plan began, provided he can dedicate near full-time or full time to his business."

12      In late October 2005, Petralia attempted to depose the Debtor and requested the
13  production of documents relevant to, *inter alia*, the Debtor's assets and income producing ability.
14  The results of that discovery effort, as summarized in the Supplemental Declaration of Thomas
15  R. Duffy filed November 7, 2005, suggest that many questions remain unanswered regarding the
16  Debtor's financial condition.  The Debtor failed to produce requested financial records and he
17  was unable to answer numerous relevant questions regarding, *inter alia*, the nature of the Rock
18  Business and the source of the reported income.

19  **Issues Presented.**

20      Petralia asserts that the Debtor is not eligible for chapter 13 relief under § 109(e) and that
21  the Second Amended Plan does not meet the requirements for confirmation under § 1325(a).
22  The Debtor responds that he has the ability to earn a regular income from the Rock Business in
23  the future.  Petralia also argues that the Second Amended Plan does not pay enough to the
24  unsecured creditors based, *inter alia*, on the liquidation value of the Property.  The Debtor's
25  response to this issue is equivocal and inconclusive.  Petralia's objection also forces an
26  examination of the "Best Efforts Test" under § 1325(b).

27      The threshold issue, therefore, is whether the Second Amended Plan is confirmable under
28  §§ 1325(a)(4) and 1325(a)(6).  A secondary issue is whether the Debtor is even eligible to be a

6

1    chapter 13 debtor under § 109(e); *i.e.*, does he have a "regular income" sufficient to fund a

2    confirmable chapter 13 plan. The omissions and inconsistencies in the record, coupled with the

3    Debtor's lack of candor in response to discovery, and his inability to commit to any level of

4    disposable income, also gives rise to his good faith. § 1325(a)(3).

5    **Analysis and Conclusions of Law.**

6    **Applicable Law and Burden of Proof.**

7           The analysis of this case begins with a review of the applicable statutes. Chapter 13 relief

8    is not available to everyone. Section 109(e) defines who may be a debtor in chapter 13 as:

9           (e) *Only an individual with regular income* that owes, on the date of the filing of the
       petition, noncontingent, liquidated, unsecured debts of less than $307,675 and

10          noncontingent, liquidated, secured debts of less than $922,975 . . . may be a debtor under
       chapter 13 of this title. (Emphasis added.)

11

12          Section 1325(a) sets forth certain elements which must be established to confirm a

13   chapter 13 plan which include:

14          (a) Except as provided in subsection (b), the court shall confirm a plan if–

15          . . .

16          (3) the plan has been *proposed in good faith* and not by any means forbidden by
       law;

17          (4) the value, as of the effective date of the plan, of property to be distributed
       under the plan on account of each allowed unsecured claim is *not less than the*

18          *amount that would be paid on such claim if the estate of the debtor were*
       *liquidated under chapter 7* of this title on such date;

19          . . .

20

21          (6) the debtor will be *able to make all payments* under the plan and to comply
       with the plan; (Emphasis added.)

22          If the trustee or the holder of an allowed unsecured claim objects to confirmation of the

23   plan, then the plan must also satisfy the requirements of § 1325(b)(1), including:

24          (A) the value of the property to be distributed under the plan on account of such
       claim is not less than the amount of such claim; or

25          (B) the plan provides that all *of the debtor's projected disposable income* to be

26          received in the three year period beginning on the date that the first payment is
       due under the plan *will be applied to make payments under the plan.* (Emphasis

27          added.)

28          Section 1322(a)(1) sets forth certain required contents of a chapter 13 plan:

(a) The plan shall–

(1) **provide for the submission of all or such portion of future earnings** or other future income of the debtor to the supervision and control of the trustee as is **necessary for the execution of the plan**; (Emphasis added.)

The Debtor has the burden of proof on all elements for confirmation of the Second Amended Plan. *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002). Under Federal Rule of Civil Procedure 43(e), the Debtor must produce evidence in support of his motion when the facts do not appear of record.

**Eligibility: The Debtor Has Not Established That He Has "Regular Income" Within the Meaning of § 109(e).**

Chapter 13 eligibility is properly considered when raised in a confirmation proceeding. *In re Nichols*, 184 B.R. 82, 87 (9th Cir. BAP 1995). To be eligible for relief under chapter 13, one must be "an individual with regular income." § 109(e). The term "individual with regular income," is defined in the Code as an "individual whose income is sufficiently stable and regular to enable such individual to *make payments under a plan* under chapter 13 . . . ." (Emphasis added.) § 101(30). There must be some factual basis for the court to determine the regularity and stability of the debtor's income. *In re Mozer*, 1 B.R. 350 (Bankr. D.Col.1979). A determination of what constitutes "regular income" is not limited to the date of filing the petition, but may properly be viewed prospectively. *In re Tucker*, 34 B.R. 257, 262 (Bankr. W.D. Okla. 1983).

Petralia argues that Debtor does not have a regular income sufficient to fund the Second Amended Plan. The Debtor responds that he can earn the income necessary to fund the Plan, as evidenced by the fact that he has been making the payments required by the Plan to date. The court is satisfied that the Debtor can generate some income on a regular basis because he has been making payments to the Trustee. However, that is not the same as "regular income" as defined by the Code. The Debtor's argument begs the questions; does the Second Amended Plan pay enough to the creditors in its present form and, if not, does he have enough "regular income" to fund a confirmable plan?

For the reasons set forth below, the court is not persuaded that the Second Amended Plan

8

1  is confirmable in its present form.  The record does not show that the Debtor even has the ability
2  to fund the escalating payments required by the Plan at its present funding level, without regard
3  to any additional payments that may be required to pass confirmation.  The only logical
4  conclusion is that the Debtor does not have "regular income" as defined in § 101(30).  The court,
5  therefore, is not persuaded that the Debtor is eligible for relief under chapter 13.  See *In re*
6  *Nosker*, 267 B.R. 555, 560 (Bankr. S.D. Ohio 2001) (denying confirmation and dismissing case
7  where the debtor failed to provide credible information concerning his income).

8  **The Debtor Has Not Established that the Second Amended Plan Satisfies the Chapter 7**
   **Liquidation Test.**
9

10 Section 1325(a)(4) requires that a chapter 13 plan pay to unsecured creditors no less than
11 what they would receive in a chapter 7 liquidation.  Petralia contends that the Debtor is not
12 paying an amount equal to the non-exempt equity in the Property.  The Debtor responds with
13 arguments about the various values he has given for the Property, but his arguments are not
14 evidence and the Debtor has the burden of proof on this issue.  Petralia's objection is well taken.

15 Looking at the record, the Debtor himself has given values for the Property ranging
16 between $312,500 (in the Prior Chapter 11) to $500,000 (in the amended chapter 13 schedules),
17 to $675,000 (in deposition testimony) and possibly more under certain conditions.  As discussed
18 above, there is no evidence to suggest whether the Debtor would get to keep the claimed
19 homestead exemption over the objection of a chapter 7 trustee; Schedule I is incomplete
20 regarding the Debtor's age and there is no evidence regarding a disability.  Because the Debtor
21 has provided incomplete information in his schedules, taken inconsistent positions regarding the
22 value of the Property, and offered no corroborating evidence to support any of his valuations, the
23 court cannot even estimate what the unsecured creditors would actually receive in a chapter 7.
24 However, the record does suggest that the unsecured creditors could receive as much as $80,000
25 from liquidation of the Property after payment of the priority claim and costs of administration,
26 even with the stated exemption.  This is substantially more than 9% of their claims.  Accordingly,
27 the court cannot find that the Second Amended Plan complies with § 1325(a)(4).
28 / / /

9

**Good Faith and the Best Efforts Test.**

11 U.S.C. § 1325(b) is euphemistically referred to as the "Best Efforts Test." It applies when the trustee or the holder of an allowed unsecured claim objects to confirmation of the chapter 13 plan. The Best Efforts Test prohibits confirmation of a plan unless either (1) the objecting creditor's claim will be fully paid, or (2) all of the debtor's projected disposable income will be applied to plan payments for at least three years. Section 1325(a)(3) requires that a chapter 13 plan be proposed in good faith. "The bankruptcy court has an independent duty to determine that a chapter 13 plan was filed in good faith." *Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 841 (9th Cir. BAP 2002). Here, these two concepts are inextricably intertwined and the Debtor has the burden of proof on both.

The "good faith" inquiry under § 1325(a)(3) requires the court to consider the totality of the circumstances, "the underlying focus being whether the debtor has acted equitably in proposing his plan." *Villanueva* at 841, citing *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982). "The court should examine the debtor's intentions and the legal effect of confirmation in light of the spirit and purposes of chapter 13." *Villanueva* at 841, citing *Chinichian v. Campolougo (In re Chinichian)*, 784 F.2d 1440, 1444 (9th Cir. 1986). Factors to be considered in determining good faith include, but are not limited to:

(1) The amount of the proposed payments and the amounts of the debtor's surplus;

(2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

(5) The extent of preferential treatment between classes of creditors;

(6) The extent to which secured claims are modified;

(7) The type of debt sought to be discharged, and whether any such debt is dischargeable in Chapter 7;

(8) The existence of special circumstances such as inordinate medical expenses;

(9) The frequency with which the debtor has sought relief under the Bankruptcy [Code];

10


1    (10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

2    (11) The burden which the plan's administration would place upon the trustee.

3  *Villanueva* at 841, citing *Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 88 n.1

4  (9th Cir. BAP 1988).

5        The Second Amended Plan proposes to discharge virtually all (91%) of the unsecured

6  claims, including Petralia's claim, which has already been adjudicated as non-dischargeable in

7  the Prior Chapter 7.  The Best Efforts Test requires the Debtor to prove that all of his projected

8  disposable income is being used to fund the Plan.   The problem here is that the court has no

9  basis to determine, or even estimate, what the Debtor's projected disposable income is, or will

10  be.  The record with regard to the Debtor's assets, employment history, ability to earn income,

11  likelihood of future increases in income, and overall financial condition is a veritable moving

12  target.  Petralia tried, apparently in good faith, to conduct discovery regarding the Debtor's

13  financial condition, but the Debtor appears to be "hiding the cards" with regard to his assets and

14  his true financial condition.  The Debtor seeks equitable relief from this court, but the court is not

15  persuaded that the Debtor has acted equitably and in good faith with regard to Petralia.

16        The Debtor promises that he can work hard enough and develop the ability to fund the

17  Second Amended Plan, but as discussed above, he has not established how much will be needed

18  to satisfy § 1325(a)(4).  The Debtor obviously doesn't intend to work hard enough to pay the

19  unsecured claims in full.  In essence, the Debtor wants to exercise total discretion over how much

20  disposable income he needs to earn without showing the court how much disposable income he

21  actually can earn.  Again, the Debtor had the burden of proof on these issues and the court is not

22  persuaded from the record before it that §§ 1325(a)(3) and 1325(b) have been satisfied.

23  **Dismissal of the Chapter 13 Case.**

24        The Trustee moves to dismiss this case based upon the Debtor's failure to establish an

25  ongoing stream of income sufficient to fund a confirmable plan.  The court agrees.  Although this

26  case has been pending for over a year and a half, the Debtor has yet to propose a confirmable

27  plan, or to establish that he has a "regular income" sufficient to fund such a plan.  Given the

28  Debtor's apparent unwillingness to come forward with a candid and complete disclosure in

11

response to discovery efforts focused on his financial affairs, the court sees no point in granting the Debtor more time to file yet another chapter 13 plan. The Debtor has no apparent intent or ability to pay the unsecured claims in full. Yet, anything less than a firm commitment and proof of ability to pay Petralia's claim in full will precipitate the same round of objections and issues raised here. The Debtor's inability to confirm a plan, coupled with the denial of more time to file another plan, is cause for dismissal under § 1307(c)(5). Based thereon, the court is persuaded that the case should be dismissed.

**Conclusion.**

Based on the foregoing, the Debtor has not established that the Second Amended Plan meets the requirements for confirmation under §§ 1325(a)(3), 1325(a)(4), 1325(a)(6) and 1325(b). The Debtor has not established that he has a regular income as required by § 109(e) of the Bankruptcy Code sufficient to fund a confirmable chapter 13 plan. Therefore, Petralia's Objection to Confirmation will be sustained and the case will be dismissed.

Dated:    February _28_ , 2006

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING


The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Office of the US Trustee
2500 Tulare Street, Rm 1401
Fresno, CA 93721

Craig Fry
PO Box 40012
Fresno, CA 93755-0012

David Jenkins
PO Box 1406
Fresno, CA 93716


Thomas Duffy
149 Bonifacio Pl
Monterey, CA 93940

George Jercich
7800 MERCED FALLS RD
SNELLING, CA 95369

M. Enmark
3447 W Shaw Ave
Fresno, CA 93711


DATED: 2-28-06          By: _Tamara Joaquen_
                             Deputy Clerk

EDC 3-070 (New 4/21/00)