1
2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

3  In re                                    )    Case No. 04-15726-B-13
                                            )
4                                           )
   George S. Jercich,                       )
5                                           )    DC No. DRJ-3
                Debtor.                      )    DC No. DRJ-4
6  ─────────────────────────────────        )    DC No. MNE-1
7  James A. Petralia; John L. Fagundes,     )
   Andrew L. Fagundes and Theresa           )
8  Fagundes; and M. Nelson Enmark,          )
   Chapter 13 Trustee,                      )
9                                           )
                Objectors.                  )
10                                          )

```
┌─────────────────────────────┐
│          FILED              │
│   ┌────────────────────┐    │
│   │                    │    │
│   │   APR  1 4 2006     │    │
│   │                    │ ✓  │
│   └────────────────────┘    │
│  UNITED STATES BANKRUPTCY COURT │
│  EASTERN DISTRICT OF CALIFORNIA │
└─────────────────────────────┘
```

11

12    **AMENDED MEMORANDUM DECISION RE MOTION TO CONFIRM
SECOND CHAPTER 13 PLAN AND TRUSTEE'S MOTION TO DISMISS**[1]

13    David R. Jenkins, Esq. appeared on behalf of the debtor, George S. Jercich (the "Debtor").

14    M. Nelson Enmark, Esq. appeared as the chapter 13 trustee (the "Trustee").

15    Thomas R. Duffy, Esq. of Duffy & Guenther, LLP appeared telephonically on behalf of objecting
16    creditor, James A. Petralia ("Petralia").

      Craig Fry, Esq. of Lang, Richert & Patch appeared on behalf of objecting creditors John L.
17    Fagundes, Andrew L. Fagundes and Theresa Fagundes (collectively "Fagundes").

18        This matter comes before the court on the Debtor's motion to confirm a second amended

19    chapter 13 plan (the "Second Amended Plan" or "Plan").  Petralia objects to confirmation on the

20    grounds, *inter alia*, that (1) the Debtor is not eligible for chapter 13 relief, and (2) the Second

21    Amended Plan does not meet the requirements for confirmation under 11 U.S.C. §§ 1325(a)(4)

22

23

24    [1]The court's Memorandum Decision Re Motion to Confirm Second Amended Chapter 13
25    Plan and Trustee's Motion to Dismiss was filed on February 28, 2006.  Based thereon, the court
      denied confirmation of the second amended plan and dismissed the bankruptcy case.  This
26    Amended Memorandum Decision is filed in response to the Debtor's Motion to Amend Findings
      of Fact which was heard on April 13, 2006 (the "Motion to Modify").  By separate order, the
27    Motion to Modify was granted in part, as reflected herein.  The court's ruling denying
28    confirmation and dismissing the case remains unchanged.

1  and (a)(6).[2]  The Trustee moves to dismiss on the grounds that the Debtor has not established a

2  regular income and cannot fund a feasible plan.  The dispute over the Debtor's ability to fund a

3  chapter 13 plan also raises a question whether the Second Amended Plan has been proposed in

4  good faith (§ 1325(a)(3)) and represents the Debtor's "best efforts" to pay his unsecured debts.

5  § 1325(b).  For the reasons set forth below, confirmation of the Second Amended Plan will be

6  denied and the case will be dismissed.

7        The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C.

8  §§ 109(e) and 1325.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (L).  This

9  memorandum decision contains findings of fact and conclusions of law required by

10  Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

11  **Findings of Fact.**

12  **Background.**

13        The Debtor filed this petition under chapter 13 on July 1, 2004.  Just days before, at the

14  case management conference, the court dismissed a case he had filed *in propria persona* under

15  chapter 11 (Case No. 04-13741: the "Prior Chapter 11").  The Debtor had previously been

16  through chapter 7 in a case filed in 1986 in the Northern District of California (Case No. 586-

17  02611-ASW: the "Prior Chapter 7").

18        Debtor owns 46.42 acres of real property in the local foothills (the "Property").  The

19  schedules filed in the Prior Chapter 11 describe the Debtor's interest in the Property as "100%

20  owner in joint tenancy with wife Mary E. Jercich."  The schedules filed in this chapter 13 list the

21  Property as "community property" and indicate the Debtor is "separated," but there is no

22  evidence that the Property has been divided in a dissolution action.  In the Motion to Modify, the

23  Debtor contends again that the Property is community property and thus would be property of the

24  bankruptcy estate.  The Debtor's spouse has not participated in these proceedings, or asserted any

25  interest in the Property.

26

27        [2]Unless otherwise stated, all references and symbols referring to the Code, section or
    sections refers to the United States Bankruptcy Code 11 U.S.C.  § 101, et seq., applicable to

28  cases filed before October 17, 2005.

The Debtor's Schedule C claims a $150,000 homestead exemption for the Property under CCP § 704.730(a)(3). That exemption is only available if the Debtor, or a spouse residing in the homestead, is over the age of 65 and/or disabled. By subsequent evidence in support of the Motion to Modify, the Debtor has shown that he was over 65 years' old when the petition was filed and no party in interest has objected to the exemption. The court therefore assumes for purposes of this analysis, that the exemption would be allowed if the Debtor filed a chapter 7 and the Property were liquidated subject to the oversight of a chapter 7 trustee.

The Debtor has yet to confirm a chapter 13 plan in this case. Petralia objected to confirmation of the Debtor's initial plan, and that plan was withdrawn before the confirmation hearing. The Debtor filed a first amended chapter 13 plan (the "First Amended Plan") which proposed to pay 10% of the general unsecured claims with irregular payments ranging from $950 per month to $3,000 per month. Petralia and Fagundes both objected to confirmation of the First Amended Plan. They argued that the First Amended Plan was not feasible and that Debtor was not eligible for chapter 13 because he had not established a "regular income" as required in § 109(e). The Trustee likewise objected to the First Amended Plan on the ground that the plan was underfunded. The court set that matter for trial, but the trial date was vacated and confirmation was denied on June 16, 2005, because the Debtor failed to comply with the court's pre-trial order. Based on the record, the court found that the First Amended Plan was not feasible under § 1325(a)(6); the Debtor's Schedules I and J showed that the Debtor did not have enough disposable income ($1,867) to make the required payments. The court continued the Trustee's dismissal motion to allow the Debtor an opportunity to propose another plan.

The Debtor filed his Second Amended Plan on August 15, 2005. In the Second Amended Plan, the Debtor proposes to pay 9% of the general unsecured claims. Based on the estimated amount of unsecured claims ($265,000), the Debtor is proposing to distribute not more than $23,850 to his unsecured creditors. The schedules list $52,000 of priority claims, which theoretically would have to be paid before the unsecured creditors, but only one priority claim has actually been filed by the Internal Revenue Service in the amount of $5,000. The Second Amended Plan is funded through an irregular payment scheme over a term of 60 months, starting

3

1  at $1,230 per month and increasing to $3,530 per month.  On October 12, 2005, the Debtor filed

2  a declaration which included amended Schedules I and J.[3]  These documents were prepared to

3  show a gross business income of $4,705.56 and an increase in the Debtor's disposable income to

4  $2,750 based on "actual performance for the period from January 1, 2005, to October 1, 2005."

5  **Value of the Property.**

6          The record is inconsistent with regard to valuation of the Property.  In the Prior Chapter

7  11 schedules, the Debtor valued the Property at $312,500.  In the initial chapter 13 schedules, he

8  valued the Property at $625,000.  Those schedules were subsequently amended to drop the value

9  to $500,000.  The Debtor later testified in a deposition that the value of the Property could be

10  between $625,000 and $720,000, and potentially $975,000 if subdivided.  None of these

11  valuations are supported by an appraisal.  The Debtor contends, in a subsequent declaration, that

12  subdivision of the Property at this time is not practicable and that the value of the Property is

13  $500,000.  For purposes of this analysis, the court will assume without making a finding, that the

14  Property has a fair market value of $500,000.  The Fagundes creditors filed a claim against the

15  Debtor in the amount of $136,835 secured by a lien against the Property.  The schedules list

16  another lien held by Robert Foley in the amount of $125,000.  Robert Foley has not filed a proof

17  of claim setting forth the balance due on this obligation and the Second Amended Plan states that

18  the Debtor is making monthly payments to Mr. Foley, outside of the Plan.  For purposes of this

19  decision, the court will therefore accept the Debtor's statement regarding the amount of this lien.

20  No other secured claims against the Property are scheduled.  As discussed above, the Debtor

21  claimed a $150,000 exemption against the Property.  Based on the valuation and the liens stated

22  in the amended chapter 13 schedules, there does appear to be non-exempt equity in the Property

23  of approximately $88,000.

24  / / /

25  / / /

26  _____

27          [3]The Debtor did not formally amend Schedules I and J in compliance with the Local
    Rules, he did not pay the required fee for filing amended schedules and these documents do not
28  appear in the docket as amended schedules.

4

**Debtor's Income.**

The Debtor is self-employed and operates a business from which, he contends, the money will come to fund his chapter 13 plan. His business involves the collection of rocks from the Property and sale of the rocks to landscapers (the "Rock Business"). The record from which the court must determine whether the Debtor has both "regular income" and sufficient "disposable income" to fund a chapter 13 plan is ambiguous and conflicting as illustrated by the following chronology. Looking first to the Prior Chapter 11, the Debtor's Schedule I filed in May 2004, stated that the "regular income from operation of business or profession" was "NONE NOW - Hopefully $10,000 monthly in 3 months." At that time, the Debtor received only his Social Security in the amount of $750 per month, against monthly expenses of $4,000. At a hearing on June 9, 2004, the Debtor explained on the record why he had filed for relief under chapter 11, and not under chapter 13:

THE COURT: Why is this in Chapter 11? Did you not qualify to be in Chapter 13?

THE DEBTOR [JERCICH]: That's correct, your Honor.

THE COURT: What, too much debt, is that –

THE DEBTOR: No, I'm not a wage earner.

THE COURT: How are you going to confirm a Chapter 11 plan if you don't have - - you don't have any income?

THE DEBTOR: I hope to have income. I - - I finally made a little bit here this last week.

Soon thereafter, the Prior Chapter 11 was dismissed and the Debtor refiled this case under chapter 13. The chapter 13 schedules are highly inconsistent with the chapter 11 schedules and the Debtor's prior statements in the court. The chapter 13 schedule of business income and expenses listed a business income of $225,000 for the 12 months prior to filing (July 2003 – July 2004). The Debtor's Schedules I and J state that his "regular income from operation of business or profession" was $7,500 per month ($90,000 per year). A declaration filed in support of confirmation states that the Debtor also has income from "my job as a manufactured home sales person." However, a subsequent brief filed by the Debtor indicates that this employment had terminated and that the income actually realized from this endeavor was minimal. The Debtor

5

1   declared in his declaration of October 12, 2005, that he had disposable income to fund a chapter

2   13 plan in the amount of $2,750.  Unfortunately, even that amount is inadequate to fund the

3   Second Amended Plan, which requires payments up to $3,530 per month.

4   In support of his objection, Petralia lodged a copy of the Debtor's 2004 federal income

5   tax return, dated October 2005.  That document paints yet another picture of the Debtor's income

6   situation.  The Debtor reported gross receipts and sales from his Rock Business of $41,069 for

7   the entire 2004 tax year, substantially less than the income projection in Schedule I.  He also

8   reported a net loss from operation of the business in excess of $6,000 and an adjustable gross

9   income in the *negative* amount of $5,553 for 2004.[4]

10  **Petralia's Objection.**

11  Petralia is a former employee of the Debtor who obtained a judgment in State court for

12  damages based on willful and malicious injury.  After lengthy litigation, Petralia's judgment was

13  determined to be nondischargeable in the Prior Chapter 7.  Petralia filed a proof of claim stating

14  the amount of the judgment, with post-petition interest, to be $107,105.  The Debtor disputes the

15  amount of this claim, but has not filed a formal objection to the claim.  For purposes of this

16  analysis, Petralia's claim is presumptively valid and deemed allowed.  § 502(a), Fed.R.Bankr.P.

17  3001(f).

18  Petralia again objects to confirmation of the Second Amended Plan on the ground that the

19  Debtor does not have a "regular income" and is not eligible to be in chapter 13 under § 109(e).

20  Petralia objects under § 1325(a)(6), on the ground that the Debtor cannot fund a confirmable

21  chapter 13 plan.  Petralia also objects under § 1325(a)(4), on the ground that the Second

22  Amended Plan would not pay unsecured creditors the amount they would receive from

23  liquidation of the Property in a chapter 7.  After first indicating that they did not oppose

24  confirmation, the Fagundes creditors joined in Petralia's objection.

25  In response, the Debtor conceded that he has not yet established "the income he is capable

26

27  [4]The net income figures include deductions for depreciation and mortgage debt totaling
    approximately $19,000.  The record is unclear as to how these deductions might actually affect

28  the Debtor's cash flow situation and his ability to service the payments under a chapter 13 plan.

6

1  of developing from his rock business" because he has been engaged in State court litigation and
2  he was seriously injured in an accident in July 2005.  He describes the Rock Business as
3  "fledgling."  He projects, "he can significantly increase the income over the income he has made
4  since his plan began, provided he can dedicate near full-time or full time to his business."

5  In late October 2005, Petralia attempted to depose the Debtor and requested the
6  production of documents relevant to, *inter alia*, the Debtor's assets and income producing ability.
7  The results of that discovery effort, as summarized in the Supplemental Declaration of Thomas
8  R. Duffy filed November 7, 2005, suggest that many questions remain unanswered regarding the
9  Debtor's financial condition.  The Debtor failed to produce requested financial records and he
10 was unable to answer numerous relevant questions regarding, *inter alia*, the nature of the Rock
11 Business and the source of the reported income.

12 **Issues Presented.**

13 Petralia asserts that the Debtor is not eligible for chapter 13 relief under § 109(e) and that
14 the Second Amended Plan does not meet the requirements for confirmation under § 1325(a).
15 The Debtor responds that he has the ability to earn a regular income from the Rock Business in
16 the future.  Petralia also argues that the Second Amended Plan does not pay enough to the
17 unsecured creditors based, *inter alia*, on the liquidation value of the Property.  The Debtor's
18 response to this issue is equivocal and inconclusive.  Petralia's objection also forces an
19 examination of the "Best Efforts Test" under § 1325(b).

20 The threshold issue, therefore, is whether the Second Amended Plan is confirmable under
21 §§ 1325(a)(4) and 1325(a)(6).  A secondary issue is whether the Debtor is even eligible to be a
22 chapter 13 debtor under § 109(e); *i.e.*, does he have a "regular income" sufficient to fund a
23 confirmable chapter 13 plan.  The omissions and inconsistencies in the record, coupled with the
24 Debtor's unwillingness or inability to respond to Petralia's discovery effort, and his inability to
25 commit to any level of disposable income, also gives rise to his good faith. § 1325(a)(3).

26 **Analysis and Conclusions of Law.**

27 **Applicable Law and Burden of Proof.**

28 The analysis of this case begins with a review of the applicable statutes.  Chapter 13 relief

is not available to everyone.  Section 109(e) defines who may be a debtor in chapter 13 as:

> (e) *Only an individual with regular income* that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 . . . may be a debtor under chapter 13 of this title.  (Emphasis added.)

Section 1325(a) sets forth certain elements which must be established to confirm a chapter 13 plan which include:

> (a) Except as provided in subsection (b), the court shall confirm a plan if--
>
> . . .
>
> (3) the plan has been *proposed in good faith* and not by any means forbidden by law;
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is *not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7* of this title on such date;
>
> . . .
>
> (6) the debtor will be *able to make all payments* under the plan and to comply with the plan;  (Emphasis added.)

If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the plan must also satisfy the requirements of § 1325(b)(1), including:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all *of the debtor's projected disposable income* to be received in the three-year period beginning on the date that the first payment is due under the plan *will be applied to make payments under the plan*.  (Emphasis added.)

Section 1322(a)(1) sets forth certain required contents of a chapter 13 plan:

> (a) The plan shall--
>
> (1) **provide for the submission of all or such portion of future earnings** or other future income of the debtor to the supervision and control of the trustee as is **necessary for the execution of the plan**. (Emphasis added.)

The Debtor has the burden of proof on all elements for confirmation of the Second Amended Plan.  *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002).  Under Federal Rule of Civil Procedure 43(e), the Debtor must produce evidence in support of his motion when the facts do not appear of record.

1 **Eligibility: The Debtor Has Not Established That He Has "Regular Income" Within the**
2 **Meaning of § 109(e).**

3    Chapter 13 eligibility is properly considered when raised in a confirmation proceeding.
4 *In re Nichols*, 184 B.R. 82, 87 (9th Cir. BAP 1995). To be eligible for relief under chapter 13,
5 one must be "an individual with regular income." § 109(e). The term "individual with regular
6 income," is defined in the Code as an "individual whose income is sufficiently stable and regular
7 to enable such individual to *make payments under a plan* under chapter 13 . . . ." (Emphasis
8 added.) § 101(30). There must be some factual basis for the court to determine the regularity
9 and stability of the debtor's income. *In re Mozer*, 1 B.R. 350 (Bankr. D.Col.1979). A
10 determination of what constitutes "regular income" is not limited to the date of filing the petition,
11 but may properly be viewed prospectively. *In re Tucker*, 34 B.R. 257, 262 (Bankr. W.D. Okla.
12 1983).

13    Petralia argues that Debtor does not have a regular income sufficient to fund the Second
14 Amended Plan. The Debtor responds that he can earn the income necessary to fund the Plan, as
15 evidenced by the fact that he has been making the payments required by the unconfirmed Plan to
16 date. The court is satisfied that the Debtor can generate some income on a regular basis because
17 he has been making payments to the Trustee. However, that is not the same as "regular income"
18 as defined by the Code. The Debtor's argument begs the questions; does the Second Amended
19 Plan pay enough to the creditors in its present form and, if not, does he have enough "regular
20 income" to fund a confirmable plan?

21    For the reasons set forth below, the court is not persuaded that the Second Amended Plan
22 is confirmable in its present form. The record does not show that the Debtor even has the ability
23 to fund the escalating payments required by the Plan at its present funding level, without regard
24 to any additional payments that may be required to pass confirmation. The only logical
25 conclusion is that the Debtor does not have "regular income" as defined in § 101(30). The court,
26 therefore, is not persuaded that the Debtor is eligible for relief under chapter 13. See *In re*
27 *Nosker*, 267 B.R. 555, 560 (Bankr. S.D. Ohio 2001) (denying confirmation and dismissing case
28 where the debtor failed to provide credible information concerning his income).

9

**The Debtor Has Not Established that the Second Amended Plan Satisfies the Chapter 7 Liquidation Test.**

Section 1325(a)(4) requires that a chapter 13 plan pay to unsecured creditors no less than what they would receive in a chapter 7 liquidation. Petralia contends that the Debtor is not paying an amount equal to the non-exempt equity in the Property. The Debtor responds with arguments about the various values he has given for the Property, but his arguments are not evidence and the Debtor has the burden of proof on this issue. Petralia's objection is well taken.

As discussed above, the court presumes for purposes of this analysis, that the Debtor would get to keep the claimed homestead exemption over the objection of a chapter 7 trustee and the court has presumed a value for the Property as stated in the amended schedules, $500,000. However, based on this value, the unsecured creditors could receive as much as $80,000 from liquidation of the Property after payment of the priority claim and costs of administration, even after allowance of the stated exemption. This is substantially more than 9% of their claims. Accordingly, the court cannot find that the Second Amended Plan complies with § 1325(a)(4).

**Good Faith and the Best Efforts Test.**

11 U.S.C. § 1325(b) is euphemistically referred to as the "Best Efforts Test." It applies when the trustee or the holder of an allowed unsecured claim objects to confirmation of the chapter 13 plan. The Best Efforts Test prohibits confirmation of a plan unless either (1) the objecting creditor's claim will be fully paid, or (2) all of the debtor's projected disposable income will be applied to plan payments for at least three years. Section 1325(a)(3) requires that a chapter 13 plan be proposed in good faith. "The bankruptcy court has an independent duty to determine that a chapter 13 plan was filed in good faith." *Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 841 (9th Cir. BAP 2002). Here, these two concepts are inextricably intertwined and the Debtor has the burden of proof on both.

The "good faith" inquiry under § 1325(a)(3) requires the court to consider the totality of the circumstances, "the underlying focus being whether the debtor has acted equitably in proposing his plan." *Villanueva* at 841, citing *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982). "The court should examine the debtor's intentions and the legal effect of

1  confirmation in light of the spirit and purposes of chapter 13." *Villanueva* at 841, citing

2  *Chinichian v. Campolougo (In re Chinichian)*, 784 F.2d 1440, 1444 (9th Cir. 1986).  Factors to be

3  considered in determining good faith include, but are not limited to:

4      (1) The amount of the proposed payments and the amounts of the debtor's surplus;

5      (2) The debtor's employment history, ability to earn, and likelihood of future increases in
6      income;

    (3) the probable or expected duration of the plan;
7
    (4) the accuracy of the plan's statements of the debts, expenses and percentage of
8      repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the
    court;
9
    (5) The extent of preferential treatment between classes of creditors;
10
    (6) The extent to which secured claims are modified;
11
    (7) The type of debt sought to be discharged, and whether any such debt is dischargeable
12     in Chapter 7;

13     (8) The existence of special circumstances such as inordinate medical expenses;

14     (9) The frequency with which the debtor has sought relief under the Bankruptcy [Code];

15     (10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

16     (11) The burden which the plan's administration would place upon the trustee.

17 *Villanueva* at 841, citing *Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 88 n.1

18 (9th Cir. BAP 1988).

19       The Second Amended Plan proposes to discharge virtually all (91%) of the unsecured

20 claims, including Petralia's claim, which has already been adjudicated as non-dischargeable in

21 the Prior Chapter 7.  The Best Efforts Test therefore requires the Debtor to prove that all of his

22 projected disposable income is being used to fund the Plan.   The problem here is that the court

23 has no basis to determine, or even estimate, what the Debtor's projected disposable income is, or

24 will be.  The record with regard to the Debtor's assets, employment history, ability to earn

25 income, likelihood of future increases in income, and overall financial condition is a veritable

26 moving target.  Petralia tried, apparently in good faith, to conduct discovery regarding the

27 Debtor's financial condition, but the Debtor appears to be "hiding the cards" with regard to his

28 assets and his true financial condition.  The Debtor seeks equitable relief from this court, but the

11

1  court is not persuaded that the Debtor has acted equitably and in good faith with regard to his
2  creditors, and particularly Petralia.

3        The Debtor argues in the Motion to Modify that the Second Amended Plan is his "best
4  effort" based on his age, health, and employment prospects.  He promises that he can work hard
5  enough and develop the ability to fund the Second Amended Plan, but as discussed above, he has
6  not established how much will be needed to satisfy § 1325(a)(4).  The Debtor contends that the
7  income from his Rock Business is improving.  As a sign of good faith, the Debtor offers in the
8  Motion to Modify to have his income situation periodically reviewed by the Trustee, who could
9  then bring a motion to increase the distribution to unsecured creditors if the income is available.
10  The problem with this proposal is two-fold.  First, at the commencement of this case, the Debtor
11  did not have sufficient disposable income to support his chapter 13 plan, and there is no authority
12  for the proposition that a "periodic review" will overcome a creditor's objection under
13  §§ 1325(a)(6)  & (b).  Second, once the court confirms a plan, which provides for less than full
14  payment of all claims, the plan payment will be essentially fixed.  Thereafter, the Debtor will
15  retain complete discretion and control over his efforts to generate the income required to perform
16  the Plan, without ever having to show the court, or the Trustee how much disposable income he
17  actually can earn.  In other words, the Debtor can choose to only work hard enough to make the
18  minimum plan payments.  The Debtor obviously doesn't intend to earn enough income to pay the
19  unsecured claims in full, so the concept of a "periodic review" is illusionary.  Again, the Debtor
20  had the burden of proof on these issues and the court is not persuaded from the record before it
21  that §§ 1325(a)(3) and 1325(b) have been satisfied.
22  **Dismissal of the Chapter 13 Case.**

23        The Trustee moves to dismiss this case based upon the Debtor's failure to establish an
24  ongoing stream of income sufficient to fund a confirmable plan.  The court agrees.  Although this
25  case has been pending for over a year and a half, the Debtor has been unable to propose a
26  confirmable plan, or to establish that he has a "regular income" sufficient to fund such a plan.
27  Given the Debtor's apparent unwillingness to come forward with a candid and complete
28  disclosure in response to Petralia's discovery efforts focused on his financial affairs, the court

12

sees no point in granting the Debtor more time to file yet another chapter 13 plan. Anything less than a firm commitment, and proof of ability, to pay Petralia's claim in full will precipitate the same round of objections and issues raised here. The Debtor's inability to confirm a plan, coupled with the denial of more time to file another plan, is cause for dismissal under § 1307(c)(5). Based thereon, the court is persuaded that the case should be dismissed.

**Conclusion.**

Based on the foregoing, the Debtor has not established that the Second Amended Plan meets the requirements for confirmation under §§ 1325(a)(3), 1325(a)(4), 1325(a)(6) and 1325(b). The Debtor has not established that he has a regular income as required by § 109(e) of the Bankruptcy Code sufficient to fund a confirmable chapter 13 plan. Therefore, Petralia's Objection to Confirmation will be sustained and the case will be dismissed.

Dated:    April /4/    , 2006

W. Richard Lee
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| United States Trustee<br>2500 Tulare St #1401<br>Fresno CA 93721 | George S. Jercich<br>7800 MERCED FALLS RD<br>SNELLING, CA 95369 | M. Nelson Enmark<br>3447 W Shaw Ave<br>Fresno, CA 93711 |
| Craig B. Fry<br>PO Box 40012<br>Fresno, CA 93755-0012 | Thomas R. Duffy<br>149 Bonifacio Pl<br>Monterey, CA 93940 | |

DATED: 4-18-06

By: _____
Deputy Clerk

EDC 3-070 (New 4/21/00)